

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-16-81

|  |  |
|---|---|
| HOPE D. GREENHAW<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILD<br><br>APPELLEES | **OPINION DELIVERED** JUNE 1, 2016<br><br>APPEAL FROM THE BOONE COUNTY CIRCUIT COURT [NO. JV-2014-35-A]<br><br>HONORABLE DEANNA "SUZIE" EVANS, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

## ROBERT J. GLADWIN, Chief Judge

In this no-merit appeal, the Boone County Circuit Court terminated appellant Hope

Greenhaw's parental rights to her daughter, F.S., on November 1, 2015. Appellant filed a

notice of appeal on November 20, 2015. Counsel for appellant filed a motion to withdraw

as counsel on appeal and a no-merit brief pursuant to *Linker-Flores v. Arkansas Department of*

*Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule

6-9(i) (2015), asserting that, other than the termination order itself, which is fully addressed

in the brief, there were no adverse rulings to appellant and explaining why there are no

nonfrivolous arguments to support an appeal. After being served by certified mail with the

motion to withdraw and a copy of the no-merit brief, appellant filed pro se points for

reversal, and the Arkansas Department of Human Services (DHS) and the attorney ad litem

filed a joint responsive brief. We affirm the order terminating appellant's parental rights and grant counsel's motion to withdraw.

## I. *Law*

In *Linker-Flores*, the Arkansas Supreme Court described the procedure for withdrawing as counsel from a termination–of–parental–rights appeal:

> [A]ppointed counsel for an indigent parent on a first appeal from an order terminating parental rights may petition this court to withdraw as counsel if, after a conscientious review of the record, counsel can find no issue of arguable merit for appeal. Counsel's petition must be accompanied by a brief discussing any arguably meritorious issue for appeal. The indigent party must be provided with a copy of the brief and notified of her right to file points for reversal within thirty days. If this court determines, after a full examination of the record, that the appeal is frivolous, the court may grant counsel's motion and dismiss the appeal.

*Linker-Flores*, 359 Ark. at 141, 194 S.W.3d at 747–48. Subsequently the supreme court elaborated on the appellate court's role in reviewing a petition to withdraw in a termination–of–parental–rights appeal, holding that when the trial court has taken the prior record into consideration in its decision, a "conscientious review of the record" requires the appellate court to review all pleadings and testimony in the case on the question of the sufficiency of the evidence supporting the decision to terminate and that only adverse rulings arising at the termination hearing need be addressed in the no-merit appeal from the prior orders in the case. *Lewis v. Ark. Dep't of Human Servs.*, 364 Ark. 243, 217 S.W.3d 788 (2005).

Termination-of-parental-rights cases are reviewed de novo. *Hune v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 543. Grounds for termination of parental rights must be proven by clear and convincing evidence, which is that degree of proof that will produce

in the finder of fact a firm conviction of the allegation sought to be established. *Hughes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 526. The appellate inquiry is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997).

## II. *Facts*

F.S., born December 23, 2004, was taken into protective custody by DHS on April 1, 2014, after F.S. and appellant had appeared in court for a family-in-need-of-services (FINS) hearing due to F.S.'s numerous school absences. At that hearing, appellant stated that she had been diagnosed with a mental illness and anxiety issues and had not been taking any of her medications. She said that her "weak mental state" was the reason F.S. had been absent from school. That afternoon, DHS workers visited appellant's home and found it to be in poor condition with toys, clothes, and food scattered around the living room, and a dish towel covered with green feces was discovered in plain sight. Appellant would not submit to a drug screen and stated, "I only have a little bit to live and I am trying to stay off my medication so I can be the best mother to my children." Appellant was arrested and charged with endangering the welfare of a minor, first degree, based on police finding appellant's youngest child in the street, unsupervised. [1]

---

[1] Appellant's younger child, E.M., born March 16, 2010, was found by police officers in the street on April 1, 2014. An officer who responded to a concerned neighbor's call told caseworkers that E.M. had run in front of his police car and he was forced to slam on his brakes to avoid hitting her. After he had returned the child home, he found her two blocks away from home shortly thereafter. E.M. is not the subject of this appeal.

SLIP OPINION

SLIP OPINION

A petition for emergency custody and dependency-neglect was filed on April 4, 2014, and the circuit court signed an ex parte order granting emergency custody to DHS that same day. A probable-cause order was filed on April 29, 2014, following a hearing held on April 7, 2014. Appellant was ordered to submit to random drug screens and comply with the case plan that DHS was to develop.

An adjudication order finding F.S. dependent-neglected was filed on June 12, 2014. The goal of the case was reunification, and appellant was ordered to undergo a psychological evaluation and to follow the case plan. A review order was filed on July 3, 2014, and the circuit court found that the goal of the case should continue to be reunification; that DHS had made reasonable efforts to provide services to achieve reunification of the family; and that appellant had partially complied with the case plan and court orders. The circuit court found that appellant had behaved inappropriately at some visitations, causing visitation to end early. She also did not provide proof of a psychological evaluation or counseling. At the review hearing held in October 2014, the circuit court found that appellant had partially complied because she had attended weekly visitations, but some had ended early due to appellant's inappropriate behavior. She had submitted to her psychological evaluation and attended a health-and-safety class. But, appellant had not completed parenting classes, and DHS had been unable to assess her home because there had been no answer at her door. She remained unemployed and had been living with her significant other, Mr. Haynes. She was ordered to comply with the case plan and court orders; cooperate with DHS; notify DHS within forty-eight hours of any change in her address or telephone number; attend

counseling; address the issues identified in her psychological evaluation, particularly her need for medication to address psychiatric issues; notify her significant other, Mr. Haynes, that he would need to participate in this case if they were to continue to live together; and allow DHS access to her home.

The review order filed on December 19, 2014, continued the goal of the case to be reunification. Appellant minimally complied with the case plan and court orders. Some visitation ended early due to her inappropriate behavior. It was recommended at her intake for counseling that she needed day treatment, but she had declined. She asked the circuit court to order that she not have to attend, and she was told that she would need to file a motion if she wanted a second psychological evaluation. She did not complete parenting classes, and she would not allow DHS access to her home. She was living with Mr. Haynes and tested positive for methamphetamine on November 5, 2014, and again at the hearing held December 9, 2014. She refused two drugs screens. Appellant was ordered to comply as set forth above, and she was also ordered to submit to random drug screens and was admonished that she had 120 days to regain custody of her daughter.

A permanency-planning hearing was held on March 24, 2015, and the circuit court found that it was in F.S.'s best interest to remain in DHS custody.[2] The goal of the case was changed to adoption, and DHS was authorized to file a petition for termination of parental rights. Appellant had minimally complied with the case plan; was living with friends; denied DHS access to her home; remained unemployed; continued to decline

---

[2] The permanency-planning order was filed on July 7, 2015.

counseling; continued to test positive for methamphetamine; continued to deny that there was causation for the removal of her child; missed over half of the visits she could have had with F.S.; failed to follow recommendations from the psychological evaluation; and had been arrested since the last court date.

### III. *Termination of Parental Rights*

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Houseman v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 227. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(B), (b)(3)(A) (Repl. 2015); *Houseman*, *supra*. Proof of only one statutory ground is sufficient to terminate parental rights. *Gossett v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 240, 374 S.W.3d 205. A trial court is only required to consider potential harm to a child's health and safety that might come from continued contact with the parents; there is no requirement to find that actual harm would result or identify the potential harm. *Hamman v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 295, at 11, 435 S.W.3d 495, 502. The potential-harm analysis is to be conducted in broad terms. *Id.*

A petition for termination of parental rights was filed April 7, 2015, and a second petition was filed on July 14, 2015, both based on the grounds set forth under Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)(*a*)—the child had been adjudicated to be

dependent–neglected and had continued to be out of the parent's custody for twelve months and, despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions that caused the removal, those conditions had not been remedied by the parent; section 9–27–341(b)(3)(B)(ii)(*a*)—the child had lived outside the home of the parent for twelve months, and the parent had willfully failed to provide significant material support in accordance with her means or to maintain meaningful contact with the child; and section 9-27-341(b)(3)(B)(vii)(*a*)—other factors or issues arose subsequent to the filing of the original petition for dependency–neglect that demonstrate that placement of the child in the custody of the parent was contrary to the child's health, safety, or welfare and that, despite the offer of appropriate family services, the parent had manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevented the placement of the child in the custody of the parent.[3]

Following a hearing on August 25, 2015, an order terminating appellant's parental rights was filed on November 1, 2015. The circuit court granted the petition to terminate on the statutory ground set forth under section 9-27-341(b)(3)(B)(i)(*a*), specifically finding that appellant did not demonstrate even minimal compliance with the case plan. Appellant did not complete the ordered parenting classes; had done no counseling; did not follow the psychological evaluation recommendation; had been in a home for only two weeks previous to the termination hearing; remained unemployed; had pending criminal charges; and had

---

[3] On July 2, 2015, F.S.'s father filed a relinquishment of parental rights and waiver consenting to the termination of his parental rights.

attended only half of the visitations. The circuit court also found by clear and convincing evidence that it was in F.S.'s best interest to terminate parental rights, considering that F.S. would likely be adopted and the potential harm to her if she were returned to her parent's custody. Specifically, the circuit court found that F.S. would be subjected to continued instability in the home and that the parent continued to have the inability to provide and care for her. Further, adoption specialist Haley Casey testified that F.S. was highly adoptable and would very quickly find a home.

Counsel contends that this appeal is without merit, concluding that clear and convincing evidence supports the circuit court's decision to terminate. Proof of only one statutory ground is sufficient to terminate parental rights, *Gossett*, *supra*, and the proof regarding appellant's inability to correct the conditions that caused removal was substantial. The statutory requirements were met, and the evidence established that F.S., who had been out of appellant's custody for sixteen months at the time of the termination hearing, could not be returned to appellant within a time period commensurate with her developmental needs, if ever. *See* Ark. Code Ann. § 9-27-341(a)(3) (the intent of the legislature is to provide permanency in a child's life when a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective). Accordingly, we hold that the circuit court's order terminating parental rights was not clearly erroneous.

IV.  *Pro Se Points*

Appellant filed pro se points for reversal claiming that her mental health had drastically improved since the psychological evaluation she had undergone pursuant to the case plan.  She further offers that she had obtained a steady job at NWA Electronics, secured a home on a twenty-acre rural cattle farm, was engaged to be married, and had formed a bond with her fiancés two minor children.  She also claims that she is capable of taking the necessary steps within her case plan to comply with the psychological evaluation's original assessment.  She states that when her insurance is approved, she will follow through with the next steps of her case plan.  She contends that her newly established faith-based principles and following the case plan will give her the ability to parent her daughter.

DHS and the attorney ad litem filed a joint response, and they contend that appellant is challenging the sufficiency of the evidence.  We agree and hold that we cannot reweigh the evidence.  *Newman v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 207, ___ S.W.3d ___.  Further, credibility determinations are left to the trial court.  *Id.*

V.  *Conclusion*

In dependency-neglect cases, if, after studying the record and researching the law, appellant's counsel determines that appellant has no meritorious basis for appeal, then counsel may file a no-merit petition and move to withdraw. The petition must include an argument section listing all rulings adverse to the appellant made by the circuit court on all objections, motions, and requests made by the party at the hearing from which the appeal arose and explaining why each adverse ruling is not a meritorious ground for reversal. The

petition must also include an abstract and addendum containing all rulings adverse to the appellant made at the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(i). After carefully examining the record and the brief presented to us, we conclude that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases and that the appeal is wholly without merit. Accordingly, we affirm the order terminating appellant's parental rights in F.S., and counsel's motion to withdraw is granted.

Affirmed; motion to withdraw granted.

KINARD and GRUBER, JJ., agree.

*Tabitha B. McNulty*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.