
# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-17-552

|  |  |
|---|---|
| | **Opinion Delivered:** October 25, 2017 |
| PATRICE OLIVER<br><br>APPELLANT | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT [NO. 16JJV-15-154] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | HONORABLE MELISSA BRISTOW RICHARDSON, JUDGE |
| | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Patrice Oliver appeals the Craighead County Circuit Court's order terminating her parental rights to her son, J.M. (DOB 03/20/15). She argues on appeal that the trial court erred in its finding of statutory grounds and in its best-interest determination. We affirm.

J.M. was born prematurely on March 20, 2015, and as a result, had to remain hospitalized. Arkansas Department of Human Services (DHS) was subsequently contacted by a hospital employee concerning appellant's inadequate supervision of the child. DHS exercised a seventy-two-hour hold on J.M. on April 30, 2015. DHS filed a petition for emergency custody and dependency-neglect on May 4, 2015. The court entered an ex parte order for emergency custody the same day. J.M. was adjudicated dependent-neglected in an order filed on June 10, 2015, due to inadequate supervision and neglect caused by

SLIP OPINION

appellant's not attending to J.M.'s needs. The court set the goal of the case as reunification, ordered DHS to provide certain services, and directed appellant to cooperate with DHS, comply with the case plan, obey all orders of the court, remain drug free, submit to random drug screens, and provide proof of any prescribed medications.

The court conducted a review hearing on October 25, 2015. In the review order filed on December 1, 2015, the court found that appellant was partially compliant with the case plan. The court conducted a permanency-planning hearing on April 15, 2016. In the order filed on April 18, 2016, the court continued reunification as the case goal and found that appellant was complying with the case plan and orders of the court. The court also found that DHS had made reasonable efforts to finalize a permanency plan. A fifteen-month review hearing took place on July 27, 2016. In the order entered the following day, the court authorized DHS to file a petition for the termination of parental rights, but it also kept reunification as a concurrent goal. The court ordered extended visits in the review order of November 9, 2016. In the review order of December 9, 2016, the court ordered both parents to submit to a urine screen and another hair-follicle test. The court noted that appellant had tested positive for cocaine and had not cooperated with DHS or complied with the case plan and all court orders. The court allowed unsupervised visitation to continue on Saturdays and Sundays but expressed that no other persons should be present in the home during this time. It found that DHS had made reasonable efforts. In a special-review order filed on January 5, 2017, the court found that visits should be supervised due to appellant's positive drug screens and lack of compliance since the last hearing.

DHS filed a petition for termination of parental rights on January 10, 2017, alleging two grounds to support the termination of appellant's parental rights: (1) the failure-to-remedy ground[1] and (2) the subsequent-factors ground.[2] The termination hearing took place on March 9, 2017. The trial court entered an order terminating appellant's parental rights on April 6, 2017, based on both grounds alleged in DHS's petition and after finding that termination was in J.M.'s best interest. Appellant filed a timely notice of appeal on April 21, 2017.

Our standard of review in termination-of-parental-rights cases is well settled, we review these cases de novo.[3] We will not reverse the trial court's rulings unless its findings are clearly erroneous.[4] In determining whether a finding is clearly erroneous, we give due deference to the opportunity of the trial court to judge the credibility of witnesses.[5] In order to terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground for termination exists and that termination is in the child's best interest.[6] Clear and convincing evidence is that degree of proof that will produce in

---

[1]Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Repl. 2015).

[2]Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*.

[3]*Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

[4]*J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997).

[5]*Dinkins*, *supra*.

[6]Ark. Code Ann. § 9-27-341(b)(3).

the fact-finder a firm conviction as to the allegation sought to be established.[7]

The rights of natural parents are not to be passed over lightly. The termination of parental rights is an extreme remedy and in derogation of the natural rights of parents.[8]   As a result, there is a heavy burden placed on the party seeking to terminate the relationship.[9] However, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[10]

Appellant challenges both statutory grounds for termination; however, only one ground must be proved to support termination.[11]   One of the grounds relied on by the court in terminating appellant's parental rights was the failure-to-remedy ground.  In order to support this ground, the evidence had to prove that J.M. had been out of appellant's custody for at least twelve months, and that despite meaningful efforts by DHS to rehabilitate appellant and correct the conditions that caused removal, those conditions had not been remedied.  Appellant argues that the court erred in finding that she failed to remedy the conditions that caused removal.  J.M. was removed from appellant due to inadequate supervision and neglect.  In the summer of 2016, the trial court ordered a trial home placement with appellant; however, that trial placement ended.  Tina Green, a foster case worker testified,

---

[7] *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992).

[8] *Fox v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 666, 448 S.W.3d 735.

[9] *Id.*

[10] *Smithee v. Ark. Dep't of Human Servs.*, 2015 Ark. 506, 471 S.W.3d 227.

[11] *Reid v. Ark. Dep't of Human Servs.*, 2011 Ark. 187, 380 S.W.3d 918.

[T]his case did progress to a point where trial placement began. That home trial placement began June 19th of 2016. That was actually after I was on the case. The home trial ended June 30th of 2016. So the visit lasted about two weeks or so. The visit ended because there were multiple men in and out of the home during the time that were not authorized by DHS. There were also issues with the daycare about [appellant] not attending to the needs of the child, sending him to daycare with a soiled diaper, braiding his hair too tight, and he has a sensory disorder and it caus[ed] lumps in his head. And so that was why the child was removed from home trial placement.

Green also stated that the men present at the home appeared to be under the influence. She testified that there were talks of a second trial home placement but that appellant was inconsistent in attending the supervised visits and subsequently began testing positive for drugs. She stated that appellant's lack of visitation was also an issue when the child was initially taken into custody. On this evidence, we hold that the trial court did not err by finding that appellant failed to remedy the conditions that caused removal.

Appellant also challenges the meaningful-efforts aspect of this ground, contending that although the court found that DHS had made reasonable efforts throughout the case, DHS failed to prove, and the court failed to find, that those efforts were also meaningful. According to appellant, reasonable efforts and meaningful efforts are not the same in that meaningful efforts require more on the part of DHS. This argument is procedurally barred. This court has held that where an appellant fails to appeal from earlier reasonable-efforts findings, we are precluded from addressing any challenges to meaningful efforts on appeal.[12] Additionally, appellant failed to raise this argument at the termination hearing.[13]

---

[12]*Del Grosso v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 305, 521 S.W.3d 519.

[13]Because only one ground is needed to support termination, we do not address the subsequent-factors ground.

SLIP OPINION

Appellant challenges the trial court's determination that termination of appellant's parental rights was in J.M.'s best interest. Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child.[14] The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent.[15] There is no requirement to establish every factor by clear and convincing evidence; after consideration of all factors, the evidence must be clear and convincing that termination is in the best interest of the child.[16]

Appellant argues that Green's testimony that J.M. was an "adoptable child" failed to satisfy the requirement that there be some evidence of adoptability. This argument is without merit. At the hearing, Green testified in pertinent part:

> I do believe J.M. [is] an adoptable child. I've mentioned a couple of times, first of all, he had health problems at his birth and I mentioned there were sensory issues. As for if I believe these are problems that would delay the adoption, well, it's something that's being dealt with. I don't think that it would delay an adoption.

She further stated that there possibly were some prospective adoptive families for J.M. Green subsequently testified that J.M. was adoptable because he had been able to remain in the same foster home with no problems and had formed a healthy bond with that family.

---

[14]*Houseman v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 227, 491 S.W.3d 153.

[15]*Norton v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 285.

[16]*Harbin v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 715, 451 S.W.3d 231.

In determining that the termination was in J.M.'s best interest, the court specifically stated that it relied on Green's testimony.  Under the juvenile code, termination of parental rights requires that the trial court consider the likelihood of adoption.[17]  Adoptability does not have to be proved by clear and convincing evidence.[18]   There instead must be evidence that addresses the likelihood of adoption.[19]  Here, there was sufficient evidence to support the court's finding that J.M. was adoptable.[20]  Thus, the trial court did not err by determining that termination of appellant's parental rights was in J.M.'s best interest. Accordingly, we affirm.

Affirmed.

VIRDEN and KLAPPENBACH, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor child.

---

[17]Ark. Code Ann. § 9-27-341(b)(3)(A)(i).

[18]*Duckery v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 358.

[19]*Thompson v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 124.

[20]Appellant does not challenge the court's potential-harm finding.