

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-16-8

| | |
|---|---|
| JENNIFER HOUSEMAN<br>APPELLANT | **Opinion Delivered** April 27, 2016 |
| V. | APPEAL FROM THE POPE COUNTY CIRCUIT COURT<br>[NO. 58JV-13-261] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILDREN<br>APPELLEES | HONORABLE KEN D. COKER, JR., JUDGE<br><br>AFFIRMED; MOTION GRANTED |

### RITA W. GRUBER, Judge

This appeal arises from the circuit court's October 8, 2015 order terminating the parental rights of Jennifer Houseman and Marc Mathis to A.M.1 and A.M.2. Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), Houseman's counsel has filed a motion to be relieved and a no-merit brief asserting that there are no issues of arguable merit to support an appeal. The clerk of this court attempted to deliver to Houseman, by certified mail, a packet with a copy of her attorney's motion and brief, along with a letter informing her of her right to file pro se points for reversal in the case. The packet, sent to Houseman's last-known address, was returned to the clerk's office marked "moved left no address, unable to forward," and no pro se points have been filed.

Counsel's brief contains an abstract and addendum of the proceedings below, discusses the adverse ruling to terminate and another possible adverse ruling, and explains that there is

SLIP OPINION

no meritorious ground for reversal.  *See Linker-Flores*, *supra*; Ark. Sup. Ct. R. 6-9(i) (2015). We note from the outset that counsel does not discuss the proper ground for termination regarding A.M.2.  However, for the reasons we set forth in this opinion, we affirm the order terminating Houseman's parental rights[1] and grant counsel's motion to withdraw.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child.  *Harbin v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 715, at 2, 451 S.W.3d 231, 233.  The first step requires proof of one or more statutory grounds for termination; the second step, the best–interest analysis, includes consideration of the likelihood that the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(B), (b)(3)(A) (Repl. 2015); *Harbin*, *supra*.

We review termination–of–parental–rights cases de novo.  *Cheney v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 209, at 6, 396 S.W.3d 272, 276.  The grounds for termination of parental rights must be proved by clear and convincing evidence, which is the degree of proof that will produce in the fact-finder a firm conviction regarding the allegation sought to be established.  *Hughes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 526, at 2.  When the burden of proving a disputed fact is by clear and convincing evidence, the appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.  *Id.*  A finding is clearly erroneous when, although

---

[1]The record before us includes a notice of appeal that is signed by Mathis's attorney but not by Mathis.  No brief has been filed on his behalf, and he is not a party to this appeal.

SLIP OPINION

there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*. In resolving the clearly erroneous question, the reviewing court defers to the circuit court because of its superior opportunity to observe the parties and to judge the credibility of witnesses. *Brumley v. Ark. Dep't of Human Servs.*, 2015 Ark. 356, at 7; *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 213, 40 S.W.3d 286, 291 (2001).

Arkansas Supreme Court Rule 6-9(i)(1) (2015) allows counsel for an appellant in a termination case to file a no-merit petition and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. The petition must include an argument section that "shall list all adverse rulings to the appellant made by the circuit court on all objections, motions, and requests made by the party at the hearing from which the appeal arose and explain why each adverse ruling is not a meritorious ground for reversal." Ark. Sup. Ct. R. 6-9(i)(1)(A). Additionally, the petition's abstract and addendum "shall contain all rulings adverse to the appellant" made by the circuit court at the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(i)(1)(B).

Here, the circuit court found that termination of parental rights was in the children's best interest and found that three statutory grounds had been proved. Counsel states in her no-merit brief that any argument challenging the statutory grounds for termination or the circuit court's "best interest" findings would be wholly frivolous. She also states that no issue of arguable merit was preserved regarding the circuit court's declining a request to place the

3

SLIP OPINION

juveniles with their paternal grandmother. *See Ogden v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 577, 424 S.W.3d 318 (holding that our statutory provision that a relative be given preferential consideration for initial placement does not apply to placement when termination of parental rights has been requested and noting that appellants presented no new or persuasive arguments that termination was precluded by the grandmother's willingness to care for the juvenile).

On December 2, 2013, the Arkansas Department of Human Services (ADHS) filed a petition for emergency custody and dependency-neglect. The accompanying affidavit referred to a "Newborn Illegal Substance Exposure" report made to ADHS. According to the affidavit, Houseman—who had a history of drug abuse—had given birth to A.M.1 on November 27, 2013. The same day, Houseman was positive for opiates, amphetamines, and benzodiazepine in the hospital's initial test; Houseman's second test revealed the additional presence of methamphetamine and propoxyphene; and the father tested positive for methamphetamine, opiates, and amphetamines. The affidavit also stated,

> [A.M.2], 1-year-old, has been living with paternal grandmother Concetta Mathis for the past few months. Jennifer stated [A.M.2] went to live with Concetta because Jennifer was pregnant, homeless and living in her car, and having problems dealing with everything going on. Concetta appears to be meeting all of the child's needs, and the parents are having no contact with her at this time.
> Jennifer has a true finding from 10-8-13 for Threat of Harm with [A.M.2] as the victim. Jennifer was admitted to Bridgeway Hospital for acute mental health treatment after stating that she wanted to kill herself by driving her car into the river and stating she wanted to choke her 1-year-old daughter.

The affidavit recited that ADHS had exercised a 72-hour hold on A.M.1 due to Houseman's drug abuse and prenatal drug exposure; that A.M.1 was "in substantial, serious danger of

irreparable harm unless removed from the care of . . . Houseman"; and that no hold was taken on A.M.2, who did not appear to be in immediate danger while living with the grandmother. On December 2, 2013, the court entered an ex parte order for emergency custody.[2]

In a December 11, 2013 probable-cause order, the circuit court found probable cause that the emergency conditions necessitating A.M.1's removal from Houseman's custody continued and that it was contrary to A.M.1's welfare to be returned home. The order allowed temporary custody of A.M.2 to remain with the grandmother.

On January 14, 2014, the juveniles were adjudicated dependent-neglected. The court found that A.M.1 was at substantial risk of serious harm "due to . . . the mother's drug use" and that A.M.2 was "at substantial risk of serious harm due to abuse to a sibling." On December 5, 2014, the court ordered an emergency change of custody, removing A.M.2 from her grandmother's home and placing her in the care and custody of ADHS in order to protect her and prevent immediate serious harm to her. Specifically, the court found that the grandmother required assistance to care for herself and A.M.2 and that other family members in the home were under the influence of drugs.

At six review hearings, from March through December 2014, the circuit court consistently found that ADHS had made reasonable efforts to provide services and that Houseman was not complying with the case plan or the court's orders. At the first permanency-planning hearing in March 2015, 15 months after the case had begun, the goal

---

[2]The petition for emergency custody and ex parte order were filed on the same day. Counsel notes that no argument was made at trial concerning an apparent "oversight" in the timing of the filings, with the order being filed before the petition.

of the case was reunification with the father only. At the third permanency-planning hearing,

held in July 2015, the goal was changed to adoption and termination of parental rights for

each parent.

ADHS filed the petition for termination of parental rights on August 13, 2015. The

petition set forth three statutory grounds for terminating parental rights:

> (i)(*a*) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.
>
> . . . .
>
> (iv) A parent has abandoned the juvenile;
>
> . . . .
>
> (vii)(*a*) That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

Ark. Code Ann. § 9-27-341(b)(3)(B). The petition also alleged that termination of parental

rights was in the juveniles' best interest.

At the termination hearing held on September 21, 2015, ADHS requested termination

of each parent's parental rights based on the same statutory grounds: failure to correct

conditions that caused removal, abandonment, and subsequent factors. Certified copies of all

orders in the matter were admitted into evidence.

Houseman testified that when the case goal was reunification with the father, "I could

SLIP OPINION

still complete services but that was kind of up to me." She acknowledged that ADHS had offered drug treatment for her. She testified that she initially went to Freedom House for inpatient treatment, she was discharged for noncompliance, she then entered a program at Decision Point and completed it in April 2014, but she continued to test positive and use drugs. She was positive for methamphetamine in January 2015 and once or twice afterward. She used drugs, including methamphetamine, in the summer preceding the September 2015 termination hearing—the last time being "two, two and a half months ago." She used methamphetamine at least once after the last permanency-planning hearing—conducted on July 27, 2015—where the goal was changed to termination of parental rights, and she continued to use prescription drugs without having a prescription.

Houseman failed to visit the juveniles from February to September 2015. She gave multiple reasons for not visiting: she was "going through a rough time in . . . life," was not taking her medication, was "bouncing from house to house," and was concerned that ADHS would deny visitation because she did not have necessities such as diapers and children's snacks, which ADHS required before permitting the visits. She acknowledged that she had not informed the court of any problems with her visits. At the time of the termination hearing, she had been living for two weeks in a travel trailer behind the home of her boss's uncle; she considered it temporary housing and had been working at her current job for six weeks. She acknowledged that all progress on obtaining housing and employment had occurred after the July permanency-planning hearing. She believed that she could benefit from outpatient drug treatment and that her children could be returned to her "within a



relatively short time."

The caseworker testified that ADHS recommended terminating the parental rights of both parents, that the juveniles were highly adoptable, and that there was a family who wanted to adopt them. She said that ADHS believed, based on the 20-month length of the case, that termination was in the children's best interest.

At closing, Houseman's counsel disputed that ADHS had proved abandonment or subsequent factors as statutory grounds for termination. Counsel acknowledged, however, that Houseman had not corrected the drug problem that had caused removal at the beginning of the case. Houseman requested more time to work on her drug problem and argued that there was no reason to terminate when there was a grandparent available to take custody.

In its order terminating parental rights, the court found that ADHS had proved by clear and convincing evidence the following:

> That termination of parental rights is in the best interest of the juveniles, taking into consideration the likelihood that the juveniles will be adopted if the termination petition is granted. The Court finds that the likelihood of adoption is very high. The current placement has expressed an interest in adopting the juveniles. There is the potential harm to the health and safety of the juveniles caused by returning the children to custody of the mother or placing them in the custody of the father. A.C.A. §§ 9-27-341 (b)(3)(A)(i) & ( ii). . . . Despite inpatient drug treatment, the mother continues to test positive for illegal drugs or prescription medication without a prescription. The mother tested positive for hydrocodone without a prescription at the first of September 2015. The mother admitted to using methamphetamine since the last permanency planning hearing. The mother currently lives in a camper and obtained employment since the permanency planning hearing. The mother went 7 months without visiting with the children. The mother does not have a good reason for not visiting the children.
>
> That the juvenile [A.M.1 has] been adjudicated by the Court to be dependent-neglected on January 6, 2014 and have [sic] continued out of the custody of the mother for twelve (12) months and despite a meaningful effort by the

SLIP OPINION

department to rehabilitate the parent and correct the conditions which caused removal, those conditions have not been remedied by the parents. A.C.A. § 9–27–341 (b)(3)(B)(i)(a). Despite inpatient drug treatment, the mother continues to test positive for illegal drugs or prescription medication without a prescription. The mother tested positive for hydrocodone without a prescription at the first of September 2015. The mother admitted to using methamphetamine since the last permanency planning hearing.

. . . .

The mother, Jennifer Houseman, has abandoned the juveniles. A.C.A. § 9–27–341(b)(3)(B)(iv).

That, subsequent to the filing of the original petition for dependency–neglect, other factors or issues arose which demonstrate that return of the juveniles to the custody of either parent is contrary to the juveniles' health, safety or welfare and that despite the offer of appropriate family services, each parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances which prevent return of the juvenile to the custody of the parent. A.C.A. § 9–27–341(b)(3)(B)(vii)(a). The mother has not had stable housing or employment since the case began. Despite inpatient drug treatment, the mother continues to test positive for illegal drugs or prescription medication without a prescription. The mother tested positive for hydrocodone without a prescription at the first of September 2015. The mother admitted to using methamphetamine since the last permanency planning hearing. The father has recently been sentenced to the Arkansas Department of Corrections for 18 months. The [sic] has not had stable housing or employment during the case.

On these findings, the court granted the petition for termination of Houseman's parental rights.

Counsel correctly states in the argument portion of her brief that only one ground of section 9-27-341(b)(3)(B) need be proven to support termination. *Sims v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 137, at 7. She agrees with Houseman's trial argument that there was insufficient evidence to prove abandonment or subsequent factors. Counsel then addresses only the failure-to-remedy ground. We note, however, that the order of

termination limited this ground to A.M.1, who was removed from Houseman's custody because of drug problems. Counsel has not followed Rule 6-9(i)(1)'s clear instruction to determine, only "after studying the record," that there is no meritorious basis for an appeal.

Because this case is one for termination, we are able to affirm by addressing a statutory ground that counsel has omitted from her brief. Even if an adverse ruling is omitted from a no-merit brief in a termination case, we may affirm if the ruling would clearly not constitute a meritorious ground for appeal. *Hughes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 526, at 5–6 (citing *Sartin v. State*, 2010 Ark. 16, 362 S.W.3d 877); *see Sartin*, 2010 Ark. 16, at 8, 362 S.W.3d at 882 (noting the inherent differences between civil and criminal law regarding burdens of proof and standards of review, and holding that a no-merit brief that does not address an adverse ruling in a criminal case does not satisfy Ark. Sup. Ct. R. 4-3(k)(1) and must be rebriefed). In termination cases, "through de novo review for clear error, the appellate court will review all of the evidence presented for error, resolving all inferences in favor of the appellee." *Sartin*, 2010 Ark. 16, at 7, 362 S.W.3d at 881 (citing *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001)).

Counsel has adequately explained why the circuit court did not clearly err in finding that it was in the children's best interest to terminate parental rights and did not clearly err in finding the failure-to-remedy ground regarding A.M.1. Regarding A.M.2, we focus our inquiry on the circuit court's finding that ADHS proved by clear and convincing evidence the statutory ground of subsequent factors. Although counsel has not discussed this ground, testimony in the abstract to her brief addresses it.

10

The circuit court found that subsequent to the filing of the original petition, Houseman had not obtained stable housing or employment; she had tested positive for hydrocodone without a prescription; and she had continued to test positive for illegal drugs or prescription medication for which she had no prescription despite ADHS's reasonable efforts to provide services. After conducting a de novo review of all the relevant evidence, we conclude that the circuit court did not clearly err in terminating Houseman's parental rights on the subsequent-factors ground regarding A.M.2.

Based on our examination of the record and the brief before us, we grant counsel's motion to withdraw and affirm the order of termination.

Affirmed; motion granted.

BROWN, J., agrees.

GLOVER, J., concurs.

**DAVID M. GLOVER, Judge, concurring.** Under our standard of review, we can and do affirm the termination of Houseman's parental rights to her children. My purpose in writing separately is to emphasize that our decision here does not in any manner diminish a parent counsel's responsibility to diligently review the record to ascertain if there is sufficient evidence to support the termination, to call attention to all adverse rulings, and to determine whether there are any issues of arguable merit for appeal.

In DHS's petition to terminate, three grounds for termination were alleged. At the termination hearing, and in the termination order, the trial court terminated Houseman's parental rights to both girls on the grounds of abandonment and subsequent factors, but the

SLIP OPINION

trial court terminated Houseman's parental rights only to the younger girl on the basis of twelve months out of custody and failure to remedy—not the older girl. Nevertheless, in a no-merit brief, parent counsel states, "While counsel for Jennifer agrees with the argument at trial that the evidence was insufficient to terminat[e] Jennifer's parental rights under the abandonment ground and the subsequent factors ground, counsel cannot argue that the termination was incorrect under the failure to remedy ground." Parent counsel's singular reliance on the failure-to-remedy ground leaves the brief deficient as to the older girl, as that ground was not a basis for termination of Houseman's parental rights to her.

In *Linker-Flores v. Arkansas Department of Human Services*, 364 Ark. 224, 217 S.W.3d 107 (2005) (*Linker-Flores II*), and *Lewis v. Arkansas Department of Human Services,* 364 Ark. 243, 217 S.W3d 788 (2005), our supreme court held that no-merit briefs in termination-of-parental-rights cases require briefs that include an argument section that consists of a list of all rulings adverse to the defendant made by the circuit court on all objections, motions, and requests made by either party with an explanation as to why each adverse ruling is not a meritorious ground for reversal; however, in both of those cases, our supreme court excused counsel's failure to address several adverse rulings and declined to send the cases back for rebriefing, noting that the adverse rulings were clearly not meritorious, and the court wanted to avoid any further delay in the cases.

*Houseman* differs from *Linker-Flores II* and *Lewis* because here, counsel failed to properly address the sufficiency of the evidence as to a ground for termination, not simply an adverse evidentiary ruling; nevertheless, the same analysis can be applied here. Parent counsel, while failing to recognize that the failure-to-remedy ground was not applied to both children, did

SLIP OPINION

abstract relevant testimony that supports the subsequent-factors ground in the termination of Houseman's parental rights to the older girl, discussed in the majority opinion. Parent counsel erroneously asserts that there was insufficient evidence to support the subsequent-factors ground; but, due to our ability to perform a de novo review of the record, we can, and do, hold there is ample evidence to support that ground. Certainly, our court may perform such a review. To be clear, this function falls first and foremost squarely on parent counsel's shoulders, not this court, and parent counsel cannot simply abdicate a no-merit review to our court to perform the work parent counsel should have performed. Our affirmance of termination of Houseman's parental rights and our grant of counsel's motion to be relieved in no way excuses appellate counsel from presenting a conforming brief—a parent losing parental rights deserves a conscientious review by appellate counsel, especially when appellate counsel determines that a no-merit brief is in order.

With the above comment, I concur.

*Tabitha B. McNulty*, Arkansas Public Defender Commission, for appellant.

No response.

13