Cite as 2023 Ark. App. 18

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-22-379

| | |
|---|---|
| KELLI ANDERSON | Opinion Delivered January 25, 2023 |
| APPELLANT | |
| | APPEAL FROM THE HOT SPRING |
| V. | COUNTY CIRCUIT COURT |
| | [NO. 30JV-20-35] |
| ARKANSAS DEPARTMENT OF | |
| HUMAN SERVICES AND MINOR | HONORABLE CHRIS E WILLIAMS, |
| CHILDREN | JUDGE |
| | |
| APPELLEES | AFFIRMED |

**N. MARK KLAPPENBACH, Judge**

Appellant Kelli Anderson appeals the 2022 circuit court order that terminated her parental rights to her two daughters who were born in 2018 and 2019.[1] Kelli asserts that because her daughters were placed with her stepsister, termination of her parental rights was not in the children's best interest. We affirm.

The Arkansas Department of Human Services (DHS) had been involved with Kelli in a previous DHS case that resulted in her son being placed out-of-state in Kelli's mother's custody. In this case, DHS took emergency custody of the girls in April 2020 because DHS came to Kelli's home and found drugs, used syringes, a syringe loaded with drugs, and spoons, all near the children's egg-crate-foam bedding on the floor. Kelli tested positive for

---

[1]The circuit court also terminated the parental rights of the non-custodial father, Matt Anderson. He visited the children only two times during this case, and at the time of termination, his whereabouts were unknown. He is not a party to this appeal.

four drugs and was arrested on two felony drug-related offenses. One of the girls tested positive for drugs in a hair-follicle drug test. In June 2020, Kelli stipulated that her daughters were dependent-neglected due to her drug use and inability to parent; she was incarcerated. Kelli admitted that she had used drugs for almost half her life; she was about forty years old.

By December 2020, Kelli had made some improvements. She completed an inpatient substance-abuse program. A case plan and services were provided for Kelli. In April 2021, however, the circuit court changed the goal to adoption. Kelli was in prison, where it was hard to work the case plan. The girls had been in the custody of relatives Erica and Jared Clark for the entire case. Erica's mother is married to Kelli's father, so Erica is Kelli's stepsister and the children's step-aunt.

DHS filed a petition to terminate Kelli's parental rights in May 2021, alleging multiple statutory grounds and that it was in the children's best interest that termination take place. Kelli had been incarcerated but was paroled at the time of the March 2022 termination hearing. Kelli said she had visited the girls and was presently working on a reentry program to better her life skills. Although Kelli was admittedly a long-time drug addict, she loves her girls and was trying to put her addiction behind her. Although her daughters had been out of her custody for almost two years, Kelli begged for more time to show she would not fail again. Kelli did not have a close relationship with Erica, but she appreciated that the girls were together in Erica and Jared's home.

The caseworker acknowledged that Kelli participated in treatment and had kept contact with her girls, but she recommended termination due to both the length of time the children had been in DHS care and Kelli's history of relapse.

The DHS adoption specialist stated that, even if the relatives did not adopt the girls, it would be easy to find adoptive homes for these young girls. Erica and Jared wanted to be considered for permanent placement and would like to adopt the girls. Erica believed it was in the children's best interest to stay with her and her husband because they were "the only thing they've known." Erica said the girls would continue to see Kelli's side of the family as they had all along. Kelli's father had often visited the girls, and Erica said she would allow Kelli's mother and the girls' older brother to visit, too.

The circuit court noted that Kelli would not complete her reentry program until mid-August 2022. Kelli had "a long history of relapses" and years of questionable stability. The circuit court's main concern was that Kelli is "a constant reoffender." The circuit court found that DHS had proved by clear and convincing evidence multiple statutory grounds for termination (including the one-year-failure-to-remedy ground, the subsequent-other-issues ground, and the aggravated-circumstances ground)[2] and that it was in the girls' best interest to terminate their mother's parental rights. The circuit court found that Erica wanted to adopt the girls and that the facts that supported the statutory grounds also supported that

---

[2]Failure to remedy (Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*)) (Supp. 2021); subsequent other issues (Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)); and aggravated circumstances (Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a)(3)(A)*).

there was potential harm if reunited with their mother. The circuit court entered a detailed order, and this appeal followed.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Gilbert v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 256, 599 S.W.3d 725. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. *Id.* Statutory grounds and a best-interest finding must be proved by clear and convincing evidence, which is the degree of proof that will produce in the fact-finder a firm conviction regarding the allegation sought to be established. *Id.* We review termination-of-parental-rights cases de novo. *Id.* The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

On appeal, Kelli does not contest the multiple statutory grounds to support termination, nor does she contest that her daughters are adoptable or that they could face potential harm if returned to her custody. Kelli's appellate argument focuses on the overall best-interest finding. Kelli asserts that it was not in the children's best interest to permanently, legally terminate familial bonds that flowed from Kelli's parentage, particularly

4

when they were already in a relative's custody.  DHS and the children's attorney ad litem disagree.  We hold that Kelli has failed to demonstrate reversible error.

Arkansas Code Annotated section 9-27-329(d) (Repl. 2020) provides that in initially considering the disposition alternatives and at any subsequent hearing, the court shall give preference to the least restrictive disposition consistent with the best interest and welfare of the juvenile.  Kelli contends that termination was premature when permanent placement of the children with Erica and Jared would have permitted a less restrictive alternative for permanency without destroying familial bonds.  She relies on *Clark v. Arkansas Department of Human Services*, 2019 Ark. App. 223, 575 S.W.3d 578, among other cases, to support her argument.

We have held that a circuit court is permitted to set termination as a goal even when a relative is available and requests custody.  *Dominguez v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 2, 592 S.W.3d 723.  The Juvenile Code's permanency goals prioritize a plan for termination and adoption unless the juvenile is already being cared for by a relative, the relative has made a long-term commitment to the child, and termination of parental rights is not in the child's best interest.  *Id.*  When the parent demonstrates stability and a reasonable hope for reunification, then there is no harm in waiting a little longer before terminating parental rights; but when that stability and a reasonable hope for reunification are not present, there is no reason to further delay permanency through termination and adoption.  *See Brumley v. Ark. Dep't of Hum. Servs.*, 2015 Ark. 356.  Here, the circuit court found Kelli to be a "constant reoffender" and that there was "overwhelming evidence" that

reunification "can't be reached without her reoffending." *See Best v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 485, 611 S.W.3d 690. The legislature's relative preference must be balanced with the individual facts of each case. *See Dominguez, supra.* Giving due regard to the credibility assessments made by the circuit court and the weight it decided to give the evidence before it, we hold that the circuit court did not clearly err in terminating Kelli's parental rights.

Affirmed.

BARRETT and MURPHY, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Demarcus D. Tave*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.